UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

*In re*:                                                                                       Case Number: 20-12148-7

SCOTT C. STEUERNAGEL,

Debtor.

---

STRATEGIC PARTNERS, INC.,
and MICHAEL SINGER,

Plaintiffs,

v.                                                                                             Adversary Number: 20-73

SCOTT C. STEUERNAGEL,

Defendant.

---

## **DECISION**

The matter before the Court is the Motion of Michael Singer ("Singer") and Strategic Partners, Inc. ("Strategic") (collectively "Plaintiffs")[1] for Partial Summary Judgment against Debtor Scott C. Steuernagel ("Steuernagel"). Plaintiffs contend there are no material facts in dispute on their 11 U.S.C. § 523(a)(2)(B) claim. Not content to rely on the affidavits filed in support of the Motion, Plaintiffs submitted another affidavit alleging additional facts in reply to the responsive brief and affidavit of Steuernagel.

For the reasons below, Plaintiffs' Motion is denied. Further, because this Court has the authority to grant summary judgment for a nonmovant, this

---

[1] As outlined in the Facts, Strategic is the Noteholder and the Secured Party. It is unclear what the capacity of Singer might be or the nature of any claim he may have in this case.

Court grants partial summary judgment in favor in Defendant, dismissing Singer's section 523 claims against Defendant.

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) as it concerns a determination about the dischargeability of a particular debt. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## FACTS

Viewed in the light most favorable to non-movant Steuernagel, the undisputed facts are as follows. *See Roger Whitmore's Auto. Servs., Inc. v. Lake Cnty., Ill.,* 424 F.3d 659, 666-67 (7th Cir. 2005).

Steuernagel was divorced. As part of his divorce, he kept a store location in La Crosse and his ex-wife kept the Madison and Eau Claire locations. Strategic was a major supplier for the stores. In early 2018, Steuernagel opened a store in Eau Claire. He decided to buy out his ex-wife. He formed the Scrub and Shoe Company LLC ("Scrub").

The purchase was financed by Strategic. As part of the transaction, Scrub signed a Note and Steuernagel signed as a guarantor. A Security Agreement was also signed by Scrub and Steuernagel. The Note limited recourse to the guarantor solely to the collateral owned by Steuernagel.[2] A Schedule was attached to the Note listing the collateral. The Schedule listed a real property address on State Street, Eau Claire, Wisconsin ("State Street

---

[2] ECF No. 9-9 at 4, sec. 6.9.

Property"). The Security Agreement also referred to the grant of a security interest in real property on State Street in Eau Claire.[3]

Before the Note and Security Agreement were signed, Plaintiffs and Steuernagel exchanged drafts and comments. Three days before the date in the Security Agreement, the parties had an email exchange that referred to "a security interest in your personal real property" "up to the value of your home" to provide the needed amount of security for the loan.[4] Steuernagel confirmed granting a security interest in his residence was fair. No list of collateral was in the drafts. It was added to the final version. Steuernagel says he did give the final drafts only a cursory review. This was, he says, because he believed all the terms had been addressed.

There is no evidence of any title work or reports on any real property. Both the Security Agreement and the Note simply contained a street address.

The State Street Property was not Steuernagel's home. The State Street Property was sold almost four months before the transaction with Plaintiffs. His home was on Lake Wissota. One or more of Plaintiffs' representatives had visited this home before any loan transaction.

There is no evidence that Plaintiffs prepared or filed a mortgage or real estate security agreement on the State Street Property. No legal description or tax parcel number is in any of the loan documents in the record.

---

[3] ECF No. 9-11 at 2, sec. 2(c).

[4] ECF No. 19-1 at 5. The email was dated August 28, 2018.

**DISCUSSION**

### A. <u>Summary Judgment</u>

The summary judgment standard under Rule 56 is familiar: summary judgment may be entered when there is no genuine issue of any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a) (made applicable by FED. R. BANKR. P. 7056); *Velez v. City of Chicago*, 442 F.3d 1043, 1047 (7th Cir. 2006). Summary judgment is not a paper trial. As noted by the Court in *Anderson v. Liberty Lobby, Inc.*, the Court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The Court has one task and one task only: to decide, based on the record, whether there is any material dispute of fact that requires a trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); see also *Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003). The Court must view all facts and indulge all inferences in the light most favorable to the Defendant and determine whether there is a genuine issue for trial.

The Plaintiff has the burden of proving by a preponderance of the evidence that each element of an exception to discharge is satisfied. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). Only if the Plaintiff can make out a prima facie case would the Defendant have to demonstrate a genuine issue of material fact to defeat the motion for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247-50.

If the Plaintiff makes out a prima facie case, then the Defendant must present evidence to show there is a genuine issue for trial. This evidence does not have to be "in a form that would be admissible at trial in order to avoid summary judgment." *Celotex*, 477 U.S. at 324. The nonmoving party may oppose the motion by "any of the kinds of evidentiary materials listed in Rule 56(c), except for the mere pleadings themselves." *Id.*

### B. <u>Dischargeability</u>

Section 523(a)(2)(B) excepts from discharge debts for obtaining money, property, or services through the use of a false financial statement. The creditor must prove by a preponderance of the evidence that the debt was obtained by the use of a statement: (1) in writing; (2) that is materially false; (3) respecting the debtor's or an insider's financial condition; (4) on which the creditor to whom the debtor is liable . . . reasonably relied; (5) that the debtor caused to be made or published with the intent to deceive. *Insurance Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1114 (3d Cir. 1995). "Materially false" means misrepresentation of information that "would normally affect the decision to grant credit." *Cmty. Bank of Homewood v. Bailey (In re Bailey)*, 145 B.R. 919, 930 (Bankr. N.D. Ill. 1992). To prove intent, the creditor must either show the debtor made the false statements knowingly or with reckless disregard for the truth. *Cohn*, 54 F.3d at 1119.

Circuits are split on what constitutes a statement respecting a debtor's "financial condition." The Seventh Circuit has not weighed in on the matter, but many bankruptcy courts in this Circuit have interpreted "financial

5

condition" narrowly as statements that specifically show net worth. *See Gehlhausen v. Olinger (In re Olinger)*, 160 B.R. 1004, 1010 (Bankr. S.D. Ind. 1993). A transactional document, like a check, merely implying a certain financial status is not enough. *Gasunas v. Yotis (In re Yotis),* 548 B.R. 485, 500 (Bankr. N.D. Ill. 2016); *see also FDIC v. Barrick (In re Barrick),* 518 B.R. 453, 460 (Bankr. N.D. Ill. 2014). Some other circuits have adopted a broader reading that includes an assertion "regarding ownership of an asset or the existence or nonexistence of an encumbrance." 4 *Collier on Bankruptcy* ¶ 523.08[2][c] (Alan N. Resnick & Henry J. Sommers eds., 16th ed.).

Assuming there was a statement about ownership of the property on State Street, it is unclear whether there was any reference to value. If not, under the former view on summary judgment there is insufficient information to conclude there was any statement that showed financial condition. Under the latter view, a statement of ownership may be enough to satisfy the broader view. But even if the Note and Security Agreement are considered writings that were materially false and related to Steuernagel's financial condition, two of the required elements are absent from the facts presented on summary judgment.

The elements missing are sufficient proof that (1) he intended to deceive and (2) that Plaintiffs reasonably relied on any misstatements. Did Steuernagel cause the State Street Property to be included with "intent to deceive"? Second, did Plaintiffs "reasonably rely" on references in those documents to the State Street Property?

6

Steuernagel agreed to grant a security interest in his residence. His residence is and was on Lake Wissota. But the Security Agreement and Note reference the State Street Property. Steuernagel says that until about August 28, there was never any discussion of the State Street Property. Instead, all of the conversation centered on granting a lien on his residence. He understood this to be the Lake Wissota property and agreed to that. He took a cursory look at the revised documents. He didn't consider the street address and it was not in prior drafts.

Plaintiffs tacitly concede that the discussions preceding the final draft prepared by Plaintiffs may not have included *any* address or description for the real estate. It was, they argue, exclusively Steuernagel's job to check their work and correct any mistake.

The question of intent is an intense one of fact. The debtor's credibility is a critical factor. *In re Phillips*, 637, BR 637,645 (Bankr. C.D. Ill. 2007). While, at times, it is possible to infer intent, that cannot generally be determined on summary judgment. There must at least be evidence to reasonably infer the requisite intent. Based on the record, there is insufficient evidence to make such an inference on summary judgment.

The second missing element is reasonable reliance. The determination of reasonable reliance by Plaintiffs is factual. It requires not only reasonableness but also reliance itself. *See Field v. Mans*, 516 U.S. 59, 68 (1995). Reasonableness is determined by the totality of the circumstances. *See Coston*

*v. Bank of Malvern (In re Coston)*, 991 F.2d 257, 261 (5th Cir. 1993). The record is barren of any evidence about:

- how the State Street Property was identified;

- what investigation, if any, Plaintiffs undertook to determine whether there was any equity or value in the property available to support a guaranty;

- the reasons that Plaintiffs took no steps to perfect a security interest in the State Street Property;

- any other evidence of a basis for reliance on the State Street Property.

As with intent, reasonable reliance is a fact-intensive analysis. *Id.* Whether there was reasonable reliance is disputed. If Plaintiffs actually relied on the State Street Property, why were no steps taken to perfect the purportedly critical security interest? If the State Street Property was crucial, where is the evidence or information about its value or the amount of equity that might exist? Based on the summary judgment record, the Plaintiffs took no steps to determine whether Steuernagel owned the property, what value it might have, or whether there were any existing mortgages. Nor did Plaintiffs try to perfect an interest in the State Street Property.

### C. Claims of Michael Singer

Defendant made no cross-motion for summary judgment. But this Court has the authority to grant summary judgment for a nonmovant. FED. R. CIV. P. 56(f). This Court grants partial summary judgment for Defendant, dismissing all of Plaintiff Michael Singer's section 523 claims against Defendant.

Section 523 excepts from discharge certain debts. The Bankruptcy Code defines "debt" as a "liability on a claim." 11 U.S.C. § 101(12). A "claim" is defined as either a right to payment or a right to equitable remedy. 11 U.S.C. § 101(5). Thus, for Singer to succeed on any claim of nondischargeability under section 523 against Defendant, Singer must show he has a right to payment or equitable remedy from Steuernagel. Based on the facts in the record, however, there is no genuine dispute that Singer has no right to payment from Defendant. None of Steuernagel's interactions with Singer show that Defendant is indebted to Singer in any way.

First, Singer's affidavit states that he is the Chief Executive Officer of Strategic.[5] While Strategic holds a claim against Defendant, being a CEO of a claimholder does not give Singer, in his personal capacity, a claim against Defendant.

Second, Plaintiffs' Complaint,[6] Singer's affidavit,[7] and the Joint Pretrial Statement[8] all state that while Defendant negotiated with Singer, Defendant obtained the loan from Strategic only.[9] There is no allegation or evidence that Singer loaned any money to Defendant. Simply engaging in negotiations on

---

[5] ECF No. 9-8 at 1.

[6] ECF No. 1, ¶¶ 8 and 9.

[7] ECF No. 9-8, ¶¶ 5, 6, and 7.

[8] ECF No. 7 at 2, sec. II, ¶ 1.

[9] ECF Nos. 1, p. 2; 9-8, p. 2; 7, Section 2.2.

behalf of a creditor does not create any right to payment for the negotiator personally.

Third, the Joint Pretrial Statement states that Defendant made certain representations directly to Singer about Defendant's purported ownership in the State Street Property and authority to pledge this property as collateral for the loan.[10] These representations also do not show any right to payment for Singer.

Finally, the Secured Negotiable Promissory Note ("Note") filed by Plaintiffs clearly states that Defendant "unconditionally promise[s] to *pay to the order of Strategic Partners, Inc. . . . .*"[11] There is no mention of Singer anywhere in the Note. Defendant did not promise to pay anything to the order of Singer. And while the Letter of Direction and Agreement attached to the Note is signed by Singer, Singer signs it in his capacity as CEO of Strategic, not in any personal capacity.[12]

There is thus no evidence that Defendant is indebted to Singer in any way. And because section 523 requires there be a right to payment, Singer cannot make a successful claim under this section. There is no debt to Singer. Based on these undisputed facts, the Court grants partial summary judgment for Defendant, dismissing all of Singer's section 523 claims against Defendant.

---

[10] ECF No. 7 at 2, sec. II, ¶ 4.

[11] ECF No. 9-9 at 1.

[12] ECF No. 9-9 at 12.

## CONCLUSION

Plaintiffs have failed to establish all of the required elements for summary judgment on the claims under 11 U.S.C. § 523(a)(2)(B). Plaintiffs' motion for partial summary judgment against Debtor Scott C. Steuernagel is DENIED.

Further, this Court finds that granting partial summary judgment for the Defendant is proper. None of the elements of any claim for Michael Singer exist under 11 U.S.C. § 523. And so the Court grants partial summary judgment for Defendant, DISMISSING all of Singer's section 523 claims against Defendant.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order and judgment consistent with this decision will be entered.

Dated: December 13, 2021

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge